# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

| | |
|---|---|
| JOEY GODWIN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 1:17-cv-01056-STA-jay |
| | ) |
| RUSTY WASHBURN, | ) |
| | ) |
| Respondent. | ) |

**ORDER DIRECTING CLERK TO MODIFY RESPONDENT,
DENYING § 2254 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner Joey Godwin has filed a *pro se* habeas corpus petition (the "Petition"), pursuant to 28 U.S.C. § 2254. (ECF No. 1.) For the following reasons, the Petition is **DENIED**.

## BACKGROUND

On January 31, 2011, the Gibson County, Tennessee, grand jury charged Godwin with the unlawful sale and unlawful delivery of more than .5 grams of cocaine on September 30, 2010. (ECF No. 18-1 at 5.) In a separate indictment, also dated January 31, 2011, the grand jury charged him with the same offenses occurring on November 22, 2010. (*Id.* at 7.) Godwin was tried before a Humboldt Law Court jury on both indictments, but a mistrial was declared because the jury was deadlocked. (*Id.* at 8-9.)

At the second jury trial, the State called two witnesses. *State v. Godwin*, No. W2013-01602-CCA-R3CD, 2014 WL 895497, at *1-3 (Tenn. Crim. App. Mar. 6, 2014), *perm. appeal denied* (Tenn. Sept. 18, 2014) ("*Godwin I*"). "Lieutenant Danny Lewis, who was an assistant

special agent with the Drug Task Force of the Humboldt Police Department," testified that he participated in "a seven-month-long operation targeting drug trafficking in public housing in the area." *Id.* at *1. "As part of this operation, the task force recruited a confidential informant ("CI") who had experience in working undercover." *Id.* The task force "placed the CI in public housing as a resident" and used him to make "controlled buys of illegal drugs." *Id.* Lewis explained that, on September 30, 2010, "[t]he CI," who was wired with a video camera, "placed a telephone call to [Godwin] and arranged to purchase drugs from him at the Fort Hill public housing complex." *Id.* After the controlled buy was complete, "the CI returned with a substance," which a field test revealed was cocaine. *Id.* "Lieutenant Lewis identified [Godwin] from the videotape[.]" *Id.* "[T]he tape also captured [Godwin's] vehicle, which the task force was able to confirm by matching the license numbers with public records." *Id.* Lewis recalled that "[t]he CI subsequently identified [Godwin] through the use of a photograph array." *Id.* "The Tennessee Bureau of Investigation's ("TBI") crime laboratory confirmed that the substance" sold to the CI "was, indeed, 0.86 grams of cocaine base." *Id.*

Lewis further testified that "the same procedure was followed on November 22, 2010, when the CI again purchased drugs from" Godwin. *Id.* at *2. The CI and the defendant "agreed to meet at Westside Grocery to complete the transaction." *Id.* When Godwin arrived at the store, "he did not roll down the car's window fully, which created a glare on the video recording." *Id.* "[T]he CI returned with the evidence, which was field tested and confirmed by the TBI as being 0.7 grams of cocaine base." *Id.* Regarding the videotape, "Lieutenant Lewis explained that although the driver's identity [was] not readily apparent, the voice on the recording was similar to [Godwin's] voice as recorded during the first transaction." *Id.* "On cross-examination, . . . Lewis

admitted that the CI was provided housing by the public housing authority at no expense to him and that utility bills were likely included in the 'package.'" *Id.* Lewis "also expounded on the CI's credibility, stating that although the CI had garnered some criminal convictions, they were far removed in time and were outweighed by the experience that he had received in working with other agencies such as the Bureau of Alcohol, Tobacco, and Firearms, the Drug Enforcement Agency ("DEA"), and other drug task forces in Tennessee and surrounding states." *Id.*

The CI testified "that before the day he first purchased drugs from [Godwin]," the defendant "had a couple' of contacts with him, and during one of the contacts, the CI obtained [Godwin's] telephone number." *Id.* On September 30, 2010, "the CI . . . place[d] a telephone call to [the defendant], and the CI drove to the designated meeting place." *Id.* Godwin "exited the apartment, approached the CI, and delivered the cocaine to him." *Id.* "The CI . . . then returned to Officer Lewis and turned over the evidence to him." *Id.*

The CI further testified "that the subsequent transaction in November 2010 followed the same protocol," and "confirmed that he purchased cocaine that day from [Godwin] and delivered it to Lieutenant Lewis." *Id.* at *3. The CI conceded on cross-examination that he had felony convictions from when he was a young man. *Id.*

The defense presented no evidence. *Id.* The jury found Godwin guilty on two counts of the sale of more than .5 grams of cocaine. *Id.* The court sentenced him to thirty years' confinement at sixty-percent for each conviction, to be served consecutively. *Id.* (*See also* ECF No. 18-1 at 52.) The Tennessee Court of Criminal Appeals affirmed. *See Godwin I*, 2014 WL 895497, at *1.

Petitioner filed a post-conviction petition in state court. (ECF No. 18-13 at 3-22.) Following an evidentiary hearing, the post-conviction trial court denied relief (ECF No. 18-13 at

34-39; ECF No. 18-14 at 40-44), and the Tennessee Court of Criminal Appeals affirmed, *Godwin v. State*, No. W201501535-CCAR3PC, 2016 WL 7732245, at *1 (Tenn. Crim. App. July 13, 2016), *perm. appeal denied* (Tenn. Nov. 16, 2017) ("*Godwin II*").

## DISCUSSION

Godwin filed his Petition on March 27, 2017, asserting four claims:

Claim 1: The trial court erred in finding that the State did not violate *Batson v. Kentucky*, 476 U.S. 79 (1986), during jury selection. (ECF No. 1 at 5.)

Claim 2: The "trial court improperly consolidated two drug charges." (*Id.* at 6.)

Claim 3: The evidence was insufficient to support the convictions. (*Id.* at 8.)

Claim 4: "[T]rial counsel was ineffective [in] caus[ing] jury to convict on insufficiency of the evidence [relating to the] drug video."[1] (*Id.*)

On August 17, 2017, Respondent Rusty Washburn[2] filed the state court record (ECF No. 18) and his Answer (ECF No. 19) to the Petition. He argues that Claims 1 and 3 are without merit (ECF No. 19 at 15-19, 21-23), and that Claims 2 and 4 are procedurally defaulted (*id.* at 20, 23-24). Petitioner did not file a Reply, although he was allowed to do so. (*See* ECF No. 7 at 2.)

### I. Legal Standards

#### A. Habeas Review and Procedural Default

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorisim and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2254. Under § 2254, habeas relief is available only if the prisoner

---

[1] The Court has liberally construed "Ground Three" of the Petition as asserting both an evidence-insufficiency claim and an ineffective-assistance-of-counsel claim.

[2] The Clerk is **DIRECTED** to substitute Rusty Washburn for Blair Leibach as Respondent. *See* Fed. R. Civ. P. 25(d).

is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted when the petitioner's claim was "adjudicated on the merits" in the state courts. 28 U.S.C. § 2254(d). In that circumstance, the federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or that it 'involved an unreasonable application of' such law; or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)(1)-(2)) (citations omitted)).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the . . . [principle] to the facts of a prisoner's case." *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing

5

evidence and do not have support in the record.'" *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (*quoting Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999).

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848. A petitioner procedurally defaults his claim when he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). Procedural default also occurs when the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Klinger v. Missouri*, 80 U.S. 257, 263 (1871)).

Only when the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claim[] will result

6

in a fundamental miscarriage of justice," will he be entitled to federal court review of the merits of a claim that was procedurally defaulted. *Id.* at 750. The ineffectiveness of post-conviction counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 14, 16-17 (2012)). A fundamental miscarriage of justice involves "a prisoner['s] assert[ion of] a claim of actual innocence based upon new reliable evidence." *Bechtol v. Prelesnik*, 568 F. App'x 441, 448 (6th Cir. 2014).

### B. Insufficient Evidence

The Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), provides the federal due process standard for evidentiary sufficiency in criminal cases. *See Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) (holding *Jackson* applies to sufficiency-of-the-evidence claims on habeas review under § 2254(d)). In *Jackson*, the Supreme Court announced that "the relevant question" "on review of the sufficiency of the evidence to support a criminal conviction," is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19 (emphasis in original).

The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Id.* at 319. *See also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam) (holding that, under *Jackson*, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial."). *Jackson*'s evidence-sufficiency standard may be met with circumstantial evidence. *See Desert Palace, Inc., v. Costa*,

7

539 U.S. 9, 100 (2003) ("[W]e have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required."); *see also United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010) ("Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.").

The AEDPA adds a layer of deference to *Jackson's* already deferential standard. By virtue of the AEDPA's command that federal habeas relief may issue only if the state court's decision is "contrary to" controlling federal law or "based on an unreasonable application" of the controlling federal law, 28 U.S.C. § 2254(d)(1)-(2), a state court determination that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference" by the federal habeas court. *Coleman*, 566 U.S. at 656.

### C. Ineffective Assistance of Counsel

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Id.* at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was

"within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks and citation omitted).

An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options . . . ." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when a federal court reviews an ineffective assistance claim:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105.

## II. Claim 1

Petitioner, who is African-American, asserts that the trial court erred in denying his challenge under *Batson*, 476 U.S. at 89. (ECF No. 1 at 5.) He points out that, "[d]uring jury selection, the State used seven peremptory challenges," which excluded "five . . .African American" individuals from the jury, leaving "thirteen (13) white[] jur[ors] to judge." (ECF No. 1-1 at 1.) He raised the issue on direct appeal, but the Tennessee Court of Criminal Appeals rejected the argument. *See Godwin I*, 2014 WL 895497, at *10. Respondent maintains that the state appellate court's decision easily passes muster under the AEDPA's deferential standards. (ECF NO. 19 at 15.) The Court agrees.

"[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Batson*, 476 U.S. at 89. "When a *Batson* objection is raised, courts employ the following three-part process to evaluate whether the defendant's equal protection rights have been violated: (1) the defendant must make a prima facie showing that the prosecution exercised a peremptory challenge on the basis of race; (2) if the defendant makes that showing, the prosecution must offer a race-neutral basis for striking the juror; and (3) the trial court must then determine whether the defendant has shown purposeful discrimination." *Goodrum v. Hutchison*, No. 19-5605, 2019 WL 6606998, at *2 (6th Cir. Oct. 18, 2019) (unpublished) (quoting *Miller-El*, 537 U.S. at 328–29 (citing *Batson*, 476 U.S. at 96–98)). "The burden of persuasion always remains with the party opposing the peremptory challenge." *Id.* (citing *Rice v. Collins*, 546 U.S. 333, 338 (2006)).

The Supreme Court has clarified that,

the critical question in determining whether a prisoner has proved purposeful discrimination at step three is the persuasiveness of the prosecutor's justification for his peremptory strike. At this stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination. In that instance the issue comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible. Credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy.

*Miller-El*, 537 U.S. at 338–39 (quotation marks and citations omitted).

In Godwin's direct appeal, the Tennessee Court of Criminal Appeals recited and applied *Batson*'s three-pronged test. *Godwin I*, 2014 WL 895497, at * 7-8. Upon review of the trial court record, the appellate court found that "[t]he State exercised the following peremptory challenges against African–American venire members:

> (1) Marjorie Donald, who had an "extended family relation" to appellant; (2) Annie Donald, whose son-in-law was appellant's brother; (3) Moselle House, whom the CI had reportedly seen "associating" with appellant; (4) Carlitha McKinley, who knew appellant; and (5) Jesse Greene, also reported by the CI as having been an "associate" of appellant.

*Id.* at *10. "[A]fter the jury was selected but before it was sworn,

> the trial court excused the jurors for a short recess. During this recess, the trial court, *sua sponte,* announced that the State had issued peremptory challenges against five African–American jurors. It further noted that "[i]n each case[,] they followed the wise practice of stating in writing why they were doing that, stating what I consider to be in each case a race[-]neutral reason...." The trial court did not read the reasons into the record but, rather, included those writings in the trial record as an exhibit. Appellant made no argument with regard to this issue in the trial court. The only comments offered by appellant's counsel were a request to read the reasons given by the State and an agreement with a statement made by the trial court that this could be an issue on appellate or post-conviction review.

*Godwin I*, 2014 WL 895497, at *9.

The Tennessee Court of Criminal Appeals determined that, "by ruling in favor of the State [on the *Batson* issue], the trial court necessarily assessed the prosecutor's credibility and credited

the State's proffered rationales." *Id.* at * 10 (quoting *State v. Jeffrey L. Vaughn,* No. W2012–01987–CCA–R3–CD, 2013 WL 1282331, at *7 (Tenn. Crim. App. March 28, 2013), *perm. app. denied* (Tenn. Sept. 25, 2013)). Finding that Godwin had not carried his burden under *Batson* because he had "offered no" evidence establishing a discriminatory motive on the prosecutor's part, the court denied relief. *Id.* at *10.

As discussed, the Tennessee Court of Criminal Appeals correctly identified *Batson*'s standards and applied them to the facts of Petitioner's case. Its decision is, therefore, not "contrary to" controlling Supreme Court law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

In addition, the appellate court's factual determinations are not unreasonable. Petitioner has not identified any clear and convincing evidence contradicting the court's findings of fact regarding the details of the prosecutor's proffered reasons for the peremptory challenges. This Court's independent review of the trial record confirms that the reasons recited by the Tennessee Court of Criminal Appeals are those which the State proffered during jury selection. (*See* ECF No. 18-5 at 3-5.) In each instance, the prosecutor indicated that the juror had some relationship with Godwin. Petitioner has not pointed to any clear and convincing evidence to undermine the state court's implicit determination that the reasons for the peremptory strikes were credible. *See Rice*, 546 U.S. at 341-42 ("Reasonable minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination."); *Miller-El*, 537 U.S. at 339–40 ("[A] state court's finding of the absence of discriminatory intent is 'a pure issue of fact' accorded significant deference [because]

12

. . . 'the finding largely will turn on evaluation of credibility.'") (quoting *Hernandez v. New York*, 500 U.S. 352, 365 (1991) (internal quotation marks and citation omitted)).

Given the record before it, the Tennessee Court of Criminal Appeals did not unreasonably reject Godwin's *Batson* challenge. *See e.g.*, *Glenn v. Eberlin*, No. 3:08CV3040, 2010 WL 750152, at *18 (N.D. Ohio Feb. 26, 2010) ("Upon review of the record, the prosecutor presented race-neutral explanations for striking Jurors 55 and 59 at the *Batson* hearing and the trial court accepted the reasons. Giving deference to the state court's findings of fact, which [Petitioner] offered no evidence to rebut, the Court concludes that the state appellate court's decision was not unreasonable."). Claim 1 is **DENIED**.

### III. Claim 2

Petitioner asserts that the trial court erroneously consolidated his two indictments for one trial. (ECF No. 1 at 6.) Respondent argues that the claim is not cognizable on federal habeas review and is, in any event, procedurally defaulted. (ECF No. 19 at 20.) Respondent's arguments are well-taken.

Petitioner presents his indictment-consolidation claim as a violation of the Tennessee Rules of Criminal Procedure and Tennessee criminal law. (ECF No. 1–2 at 1-3.) It is well-established, however, that federal habeas corpus relief is not available "for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Claim 2 is therefore non-cognizable and must be dismissed.

In addition, the claim is procedurally defaulted because Petitioner did not raise this trial-error claim on direct appeal (*see* ECF No. 18-8 at 6), and the time for presenting it to the state courts has passed, *see* Tenn. Code Ann. § 40-30-106(g). He nevertheless asserts that post-

conviction counsel's failure to present the issue to the state courts is cause to excuse the default. (ECF No. 1 at 7.) The argument is misplaced. Although, *Martinez* holds that cause may exist to excuse the default of an ineffective-assistance-of-trial-counsel claim if post-conviction counsel was ineffective for failing to raise it, *see Martinez*, 566 U.S. at 14, post-conviction counsel's ineffective assistance does not excuse the default of a trial-error claim. *See Abdur'Rahman v. Carpenter*, 805 F.3d 710, 714, 716 (6th Cir. 2015).

Accordingly, Claim 2 is **DISMISSED** as non-cognizable and procedurally defaulted.

### IV. Claim 3

Petitioner asserts that the evidence was insufficient to support his convictions. (ECF No. 1 at 8.) He raised the issue on direct appeal (ECF No. 18-8 at 6), but the Tennessee Court of Criminal Appeals rejected it, *see Godwin I*, 2014 WL 895497, at *1. Respondent argues that the state appellate court's decision survives AEDPA review. (ECF No. 19 at 21-23.)

"Tennessee Code Annotated section 39-17-417(a)(3) makes it an offense to knowingly sell a controlled substance." *State v. Jones*, No. W2017-01607- CCA-R3-CD, 2018 WL 3993318, at *2 (Tenn. Crim. App. Aug. 17, 2018). "Cocaine is a Schedule II controlled substance." *Id.* (citing Tenn. Code Ann. § 39-17-408(b)(4)).

On direct appeal in Godwin's criminal case, the Tennessee Court of Criminal Appeals set forth *Jackson*'s evidence-sufficiency standards and reviewed the evidence. *Godwin I*, 2014 WL 895497, at *4. With respect to "the offense dated September 30, 2010," the court found that the evidence, viewed in the light most favorable to the State, demonstrated that,

> officers with the drug task force worked in conjunction with the CI to arrange for the CI to purchase an amount of cocaine from appellant. In the presence of officers, the CI contacted appellant through the given telephone number and arranged to meet him at an apartment in the Fort Hill public housing complex. When the CI

> arrived, appellant exited the apartment and sold cocaine to the CI. The State provided both audio and video recordings of the transaction, and the CI further identified appellant in a photograph array. By stipulation, the State introduced a laboratory report from the TBI confirming that the substance in question was, in fact, 0.86 grams of cocaine base.

*Id.* at *5. Regarding the November 22, 2010, transaction, the court found that,

> the CI, in the presence of drug task force officers, telephoned appellant and arranged to purchase cocaine from him. This time, however, appellant relocated from the agreed-upon meeting place of "the Crossing" to a local grocery during the course of the transaction. The CI and appellant eventually met at the Westside Grocery. When appellant parked his vehicle, the CI approached the driver's side, and appellant handed cocaine to him. Again, the State provided recorded evidence of the transaction, and the CI confirmed that he had, indeed, purchased cocaine from appellant a second time. The TBI laboratory report confirmed that the substance contained 0.7 grams of cocaine base.

*Id.* Based on this record, the court concluded that that the evidence was sufficient to support the convictions for the sale of cocaine in amounts greater than .50 gram. *Id.*

Because the Tennessee Court of Criminal Appeals identified *Jackson*'s evidence-sufficiency standards and applied them to the facts of Petitioner's case, its determination that the evidence was sufficient to sustain the convictions is not "contrary to" controlling Supreme Court law. *See Williams*, 529 U.S. at 406.

In addition, the appellate court's conclusions, and the factual determinations on which they are based, are not unreasonable. Although Petitioner argues that "[t]he September video never showed" the confidential informant giving Lieutenant Lewis the drugs after the transaction (ECF No. 1-3 at 2), Lewis testified that the informant handed him a substance "rolled up in a newspaper," which proved, after testing, to be cocaine (ECF No. 18-3 at 96; *see also id.* at 101-02). And despite his insistence that the failure of the November video to show the seller's entire face rendered the evidence insufficient to convict him (ECF No. 1-3 at 4), Petitioner admits (*id.*) that Lewis testified

15

that the voice in the video was similar to Godwin's voice from the September video. (*See also* ECF No. 18-3 at 104). Petitioner also does not dispute that Lewis further testified that the phone number that the informant called to arrange the November purchase "was the same number that [was] called" to arrange the September purchase from Godwin. (*Id.*) What is more, the informant testified that it was Godwin who sold him the cocaine during the November transaction. (*See* ECF No. 18-3 at 147). The jury was tasked with weighing the evidence, resolving evidentiary conflicts, and assessing the credibility of witnesses. *See Jackson*, 433 U.S. at 319. The Tennessee Court of Criminal Appeals gave "full play," *id.*, to the jury's decision to credit the testimony of the State's witnesses. The court's conclusion that the evidence was sufficient to sustain the convictions is not an unreasonable application of *Jackson*'s standards. Claim 3 is **DENIED**.

## V.     Claim 4

Petitioner asserts that trial counsel was ineffective in failing to investigate his case. (ECF No. 1-3 at 5.) He alleges that counsel should have, but did not, interview the confidential informant or "petition[] the court for expert funding for the testing of alleged drugs[.]" (*Id.*) Respondent argues that the claim is procedurally defaulted. (ECF No. 19 at 23-24.)

Godwin did not raise the claim on appeal from the denial of post-conviction relief (*see* ECF No. 18-15 at 12, 14-15), and the time for advancing the claim in the state courts has passed. Because he has not asserted cause to excuse the default or identified newly discovered evidence of his actual innocence, he has not overcome the default. Claim 4 is therefore **DISMISSED**.

For these reasons, the Petition is **DENIED**.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition. Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore **DENIED**.[3]

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: January 30, 2020.

---

[3] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.